IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01864-PAB-KLM

ALBERT ABEYTA,

    Plaintiff,

v.

OFFICER MICHAEL CORTESE, Department of Corrections,
LIEUTENANT GREGORY HEIDENTHAL, Department of Corrections, and
TOM CLEMENTS, Executive Director of the Colorado Department of Corrections,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants' motion for summary judgment [Docket No. 44]. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**

Unless otherwise indicated, the following facts are not in dispute. Plaintiff Albert Abeyta is an inmate at the Fremont Correctional Facility ("Fremont") of the Colorado Department of Corrections ("CDOC"). In 2009, plaintiff was incarcerated at the CDOC's Colorado Territorial Correctional Facility ("CTCF"). On February 5, 2009,[1] he was required to wear latex gloves while working in the CTCF kitchen. Within two hours of putting on the gloves, plaintiff experienced burning on his wrists and had difficulty breathing. He was rushed to the prison infirmary. The infirmary staff reported that he

---

[1] In his response to defendants' summary judgment motion, plaintiff states that this first reaction to latex occurred in January of 2009. *See* Docket No. 47 at 4, ¶ 1. The medical records, *see* Docket Nos. 47-11, 47-12, and his deposition testimony, *see* Docket No. 47-2 at 34, indicate that this incident occurred in February of 2009.

had an "[a]cute reaction to latex gloves." Docket No. 47-11 at 1. The medical report also references the following symptoms: "Throat swollen, trouble swallowing and itching rash with paresthesias in extremities." *Id.* The staff bandaged his wrists and gave him "epinephrine and [B]enadryl which helped with the breathing problem." Docket No. 47-12 at 1. The staff then sent him back to his cell. Later that day, he returned to the infirmary "[complaining of] burning of his hands with numbness." *Id.*

On February 9, 2009, plaintiff returned to the infirmary, "present[ing] with ongoing problems related to latex allergy from 02/05/09." Docket No. 47-13 at 1. Plaintiff "continue[d] to have swollen red hands, lips, feet, and blotches on [his] chest." *Id.* Although the record is unclear on the precise date, at some point in February 2009, plaintiff's symptoms grew worse and he was transferred by ambulance to St. Mary Corwin Medical Center in Pueblo, Colorado. When plaintiff's condition continued to worsen, he was transferred to the University of Colorado Hospital on February 15, 2009, where he stayed until February 24, 2009. The University of Colorado medical records indicate that plaintiff was admitted to the hospital's burn intensive care unit with blistering throughout his body. *See* Docket No. 47-18 at 2. The hospital diagnosed him as having "Stevens-Johnson syndrome from LATEX ALLERGY." Docket No. 47-17 at 2 (emphasis in original). He remained in either the prison infirmary or civilian hospitals until August 18, 2009. *See* Docket No. 47-14 at 1 (stating that plaintiff "was in the infirmary for several months [due to] a latex allergy where he developed Stevens Johnson syndrome").

After his August 2009 discharge from the infirmary, plaintiff has been exposed to latex at CDOC facilities. For instance, plaintiff contends that, while he was still at

2

CTCF, Lieutenant Gregory Heidenthal instructed Correctional Officer Michael Cortese to remove plaintiff from a cell on October 20, 2009. When doing so, Officer Cortese grabbed plaintiff's wrists with latex gloves. Plaintiff contends that he told Officer Cortese that he could not be touched with latex. According to plaintiff, however, he did not provide Officer Cortese with that warning until after Officer Cortese touched him with the latex gloves. Plaintiff states that he suffered severe burns as a result. Plaintiff also avers that Lieutenant Heidenthal afterward accused plaintiff of lying about the latex allergy.[2]

Plaintiff was later transferred to San Carlos Correctional Facility, where he was touched by an officer wearing latex gloves, allegedly resulting in small burns on his arm. Plaintiff was later transferred to the Fremont Correctional Facility, where an officer touched plaintiff on May 10, 2011 while wearing latex gloves, which plaintiff contends resulted in severe burns on his wrist. The same officer touched plaintiff with latex gloves on June 7, 2011. Plaintiff alleges that, as a result, his wrists and forearms suffered burns in the shape of the officer's fingers. Later that same month, a nurse touched him while wearing latex gloves, resulting in burn marks according to plaintiff. Plaintiff contends that the burn marks from the June incidents were still visible on September 28, 2011, when defendants took his deposition, an assertion defendants do not dispute.

Plaintiff tested negative for a latex allergy in July 2010. Based on this result,

---

[2]In December 2009, a CTCF nurse refused to take off her latex gloves when administering insulin to plaintiff. Plaintiff, therefore, refused to have the insulin administered.

defendants dispute that plaintiff suffers from a latex "allergy." Although they cite an alternative explanation for some of the symptoms, defendants do not dispute that plaintiff was hospitalized and in the infirmary for a number of months after having been diagnosed with Stevens-Johnson syndrome associated with latex exposure. Furthermore, defendants' own medical records for plaintiff acknowledge the reactions plaintiff has had to latex exposure. Once its current supply of latex gloves is exhausted, the CDOC plans to switch to vinyl gloves.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*;

*see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

### A. Defendants Cortese and Heidenthal

Plaintiff contends that defendants Cortese and Heidenthal violated his Eighth Amendment right to be free of cruel and unusual punishment and seeks damages from them in their individual capacities.[3] In response, these defendants assert the defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

---

[3]The Eighth Amendment applies to the states by incorporation through the Fourteenth Amendment. *See Mitchell v. Maynard*, 80 F.3d 1433, 1440 (1996). For ease of reference, the Court refers herein only to the Eighth Amendment.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007). For defendants to be liable for violating the Eighth Amendment, plaintiff must show that Cortese and Heidenthal were deliberately indifferent to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "deliberate indifference" test has both "an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Eighth Amendment. *See Farmer*, 511 U.S. at 834. The subjective component is met if a prison official knows of and disregards excessive risks to an inmate's health and safety. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

Here, plaintiff identifies no evidence that Lieutenant Heidenthal or Officer Cortese knew of and disregarded an excessive risk to his health and safety. Rather, plaintiff contends that Heidenthal instructed Cortese to remove plaintiff from a cell. Although plaintiff contends that Heidenthal later expressed his belief that plaintiff was lying about his latex allergy, there is no record evidence that Heidenthal knew that Cortese was going to use latex gloves or, if he were to use them, that plaintiff would suffer a severe reaction to them. As for Officer Cortese, plaintiff contends that he told Cortese that he could not touch him with latex, but only did so after Officer Cortese had already done so. Furthermore, plaintiff identifies no evidence that Cortese otherwise had any reason to know that plaintiff might suffer a severe reaction to being touched by

latex. As plaintiff himself points out, "the guards who keep touching the Plaintiff do not necessarily know the contents of his medical records, and the references to the latex allergy and resulting pain and suffering from being exposed to latex." Docket No. 47 at 13. Because plaintiff has not identified evidence that the individual defendants violated his Eighth Amendment rights, there is no need to progress to the second prong of the qualified immunity analysis. Defendants Cortese and Heidenthal are entitled to summary judgment on plaintiff's claim against them.

### B. Defendant Clements

Plaintiff also sues Tom Clements, in his role as the Executive Director of the CDOC, for violating the Eighth Amendment and seeks a permanent injunction preventing CDOC employees from exposing plaintiff to latex. To be entitled to a permanent injunction, plaintiff must show "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175, 1180 (10th Cir. 2003).

In regard to the merits, Clements relies exclusively on the July 2010 negative allergy test, arguing that plaintiff is essentially disputing the medical care he is receiving. *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *see also Boles v. Dansdill*, 361 F. App'x 15, 18 (10th Cir. 2010) (stating that prisoner's disagreement over how allergies were treated does

not support Eighth Amendment claim).  This case, however, is not a dispute over how to treat plaintiff's condition.  Rather, this case turns on whether, if the CDOC is aware of the actual reactions plaintiff suffers when exposed to latex, it would violate the Eighth Amendment for the CDOC not to take steps to prevent that harm.  In regard to that issue, Clements does not dispute that there is record evidence associating severe reactions with latex exposure, whether due to an allergic reaction or not.  *See, e.g.*, Docket No. 47-13 at 1 (infirmary record from Feb. 9, 2009 indicating that plaintiff "present[ed] with ongoing problems related to latex allergy from 02/05/09" and "continue[d] to have swollen red hands, lips, feet, and blotches on [his] chest").  Nor does he address the evidence that doctors at the University of Colorado Hospital diagnosed plaintiff as suffering from Stevens-Johnson syndrome associated with latex exposure.  Moreover, Clements does not present any expert testimony regarding the implication of a negative allergy test or the diagnosis of the allergy here prior to such a test.  Finally, assuming plaintiff does suffer severe reactions to latex, Clements does not argue that such a medical condition is insufficiently severe to implicate the Eighth Amendment.  *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 620-21 (3d Cir. 2011) (concluding that inmate sufficiently alleged an Eighth Amendment violation where defendant knew of plaintiff's "allergy and its resultant pain and risk of permanent injury").

    As for the risk of irreparable harm, defendants contend that the risk of future harm is too speculative to support issuance of an injunction.  *See In re Consolidated Delta Smelt Cases*, 812 F. Supp. 2d 1133, 1196 (E.D. Cal. 2011) ("Plaintiffs bear the burden of showing that 'irreparable injury is likely in the absence of an injunction.'

Attenuated, conjectural, or speculative injuries will not suffice.") (citations omitted). Defendants, however, acknowledge the continued use of latex gloves in their facilities and have not indicated that plaintiff is excepted from exposure to them. Consequently, and in light of the seriousness of plaintiff's alleged reaction to latex, the Court finds that there is at least a triable question regarding whether an injunction might be necessary to prevent future harm to plaintiff.[4] While defendants claim that the CDOC will be switching to vinyl gloves, the CDOC has yet to do so. Moreover, defendants make no suggestion that there is any CDOC-wide effort to alert CDOC correctional officers and medical personnel to plaintiff's alleged latex allergy.

The Court is not persuaded by the CDOC's argument that an injunction would constitute the Court "'immers[ing] [itself] in the management of state prisons.'" Docket No. 44 at 11 (quoting *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994)). The CDOC is already preparing to switch to vinyl gloves, which undermines its contention that a court order requiring it to do so in regard to plaintiff will impose a burden on the CDOC that outweighs the potential benefits to plaintiff's health and safety.

As a final note, although defendants contend that the public interest would be adversely affected by an injunction, they fail to explain how such would be the case if, in fact, plaintiff suffers severe reactions to latex exposure. Again, the CDOC merely points out that plaintiff describes that reaction as an allergy despite the negative allergy

---

[4] Defendants again note the negative allergy test in arguing the absence of any irreparable harm, but fail to explain why such test, when compared to plaintiff's evidence that the University of Colorado Hospital diagnosed him with a latex allergy, forecloses the existence of a disputed issue of material fact. As noted above, defendants do not dispute that he has suffered such reactions in the past.

test. The Court does not believe that this one piece of evidence is sufficient to prevent plaintiff from presenting to the Court his evidence in support of injunctive relief.[5]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion for summary judgment [Docket No. 44] is GRANTED in part and DENIED in part. Officer Michael Cortese and Lieutenant Gregory Heidenthal are entitled to summary judgment on plaintiff's Eighth Amendment claim against them and they are dismissed from this case. It is further

**ORDERED** that the jury trial scheduled to commence on August 13, 2012 will now be a trial to the Court on plaintiff's claim for injunctive relief.

DATED July 24, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[5] A jury trial is scheduled to commence in this case on August 13, 2012. Because the only claim that will remain is for injunctive relief, the trial will now be to the Court. *Cf.* Docket No. 47 at 12 ("Even if the Court determines that the undisputed facts show that Cortese and Heidenthal's actions were only negligent, there must be a Bench Trial to litigate the disputed issues of material fact regarding whether Plaintiff has an allergy to latex, whether he experiences pain and suffering when he is exposed to latex, and whether he is entitled to an Order enjoying the Department of Corrections from continuing the expose him to latex and the resulting pain and suffering.").